UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:06-CR-00058 JAM |
| Plaintiff, | |
| v. | ORDER GRANTING DEFENDANT'S RENEWED MOTION FOR RELEASE PENDING APPEAL |
| JAGDIP SINGH SEKHON, | |
| Defendant. | |

This matter comes before the Court on Defendant Jagdip Singh Sekhon's ("Defendant" or "Sekhon") Renewed Motion for Release Pending Appeal (Doc. #563). The United States of America ("the "government") opposes the Motion (Doc. #564). On June 5, 2012, the Court held a hearing on this motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Until the inception of this case, Defendant was an immigration lawyer. He started his law office in 1995 in San Francisco, and two years later he hired his brother Jagprit,[1] a recent law

---

[1] Because Defendant shares the same surname as his codefendant and brother, Jagprit Singh Sekhorn, to avoid confusion codefendant Jagprit Singh Sekhon will be referred to by his first name alone.

1

graduate.  By 1998, the firm of Sekhon & Sekhon maintained two offices, with Defendant practicing out of San Francisco and Jagprit running a second office in Sacramento.

In 2003, the Immigration and Customs Enforcement Agency launched an investigation directed principally at asylum applications from Romanian applicants.  In September of that year, the investigation resulted in the covert recording of client interviews conducted by Jagprit and his assistants in the Sacramento office.  Four persons associated with the Sacramento office – Jagprit; Manjit Rai, another lawyer, Iosef Caza and Luciana Harmath; two Romanian translators – were indicted and convicted at trial for conspiring to make false statements in connection with the covert officer, in violation of 18 U.S.C. §§ 371 and 10001, as charged in Counts Seventeen and Eighteen of the Indictment (Doc. #94).  Defendant was not charged with the conspiracy involving the undercover officer.

The four defendants associated with the Sacramento office were also charged with substantive violations of 18 U.S.C. §§ 1001 and 1546 in connection with asylum applications, principally from Romanian immigrants.  Sekhon was not charged as either a perpetrator or aider and abetter of the substantive false statement (§ 1001) or perjured asylum application (§ 1546) offenses alleged in Counts Two through Sixteen in the Indictment.  Instead, Defendant was charged and convicted on Count One, a conspiracy count (18 U.S.C. § 371).  Count One contained two objects – (1) defrauding the government by impeding the lawful functions of the Bureau of Citizenship and Immigration Services ("CIS") in the

2

fair and objective evaluation of asylum applications, and to do so by deceit, craft, and trickery and (2) making false statements on asylum applications.

Defendant's guilty verdict was returned on June 24, 2009 (Doc. #325). He was sentenced to a term of 60 months and was remanded into the custody of the Bureau of Prisons on September 24, 2010.  Defendant has served twenty months of his sixty month sentence and is presently confined in Atwater, California (Doc. #462).

On December 28, 2010, Defendant filed his initial motion for release pending the resolution of his appeal in the District Court (Doc. #530).  A hearing on the release motion was held before Judge Frank Damrell on January 24, 2010 (Doc. #544).  In light of the government's concession that Defendant posed no flight risk or danger to the community, the trial court denied Defendant's motion on the basis that Defendant raised no substantial question of law or fact sufficient under Section 3143(b).  Defendant appealed, and the Ninth Circuit affirmed. <u>United States v. Sekhon</u>, No. 10-10485 (9th Cir. May 4, 2011) (order denying Defendant's motion for bail pending appeal).

On April 6, 2012, Defendant renewed his motion for release pending appeal in the Ninth Circuit on the basis that in his previous motion for release his appellate counsel did not have sufficient opportunity to review the record and relied on trial counsel as to what issues might be cognizable on appeal.  On May 9, 2012, the Ninth Circuit denied Defendant's renewed motion for bail without prejudice to refiling after presentation of the motion to

this Court. United States v. Sekhon, No. 10-10485 (9th Cir. May 9, 2012) (order denying without prejudice to renewal of Sekhon's motion for bail pending appeal, following presentation of the motion to the district court).

On March 29, 2012, Defendant submitted his opening brief to the Ninth Circuit presenting four issues for appeal: (1) Did the government's impermissible charging of multiple, separate conspiracies in Count One prejudice Sekhon, requiring a new trial? ("Kotteakos issue"); (2) Did the government fail to prove that Sekhon entered into a conspiracy criminalized by 18 U.S.C. § 371? ("substantial evidence issue"); (3) Was the "defraud" theory unconstitutional as applied to Sekhon's acts of legal advocacy? ("Skilling issue"); (4) Did the district court commit reversible error in denying the defense's proposed theory-of-the-case instruction on the duties of immigration counsel ("theory-of-the-case instruction issue")? The government's consolidated answering briefing is currently due on September 27, 2012, but as discussed at the June 5 hearing, will likely be continued.

## II.  OPINION

### A.  Legal Standard

18 U.S.C. § 3143(b)(1) requires detention pending appeal:

> [T]he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal ... be detained, unless the judicial officer finds—
>
> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142 (b) or (c) of this title; and

      (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

          (i)   reversal,

          (ii) an order for a new trial,

          (iii) a sentence that does not include a term of imprisonment, or

          (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

Because the government does not argue that Defendant is a flight risk or a danger to the community, the issue for this motion is whether there is "a substantial question of law or fact likely to result in . . . reversal." 18 U.S.C. § 3143(b)(1)(B)(i). The Ninth Circuit addressed the "substantial issue" prong in <u>United States v. Handy</u>, 761 F.2d 1279 (9th Cir. 1985). The Court defined a "substantial question" as one that is "fairly debatable." <u>Handy</u>, 761 F.2d at 1283.

The type of question that must be presented is one that is "likely to result in a reversal. . . ." <u>Id.</u> at 1280. However, the defendant does not need to demonstrate at the outset of the appellate proceedings that the appeal will probably result in a reversal; Defendant must argue that the "'chance for reversal is substantial.'" <u>Id.</u> (quoting S. Rep. No. 98-225, 98th Cong., 2d Sess. 27 <u>reprinted in</u> 1984 U.S. Code Cong. & Ad. News 3182, 3210).

The <u>Handy</u> Court further expounded upon the kind of issues that satisfy the "substantial question" requirement:

    The question may be 'substantial' even though the judge or justice hearing the application for bail would affirm on the merits of the appeal. The question may be new and novel. It may present unique facts not plainly covered by the controlling precedents. It may involve important questions

5

> concerning the scope and meaning of decisions of the Supreme Court. The application of well-settled principles to the facts of the instant case may raise issues that are fairly debatable.

Id. at 1281 (quoting D'Aquino v. United States, 180 F.2d 271, 272 (11th Cir. 1950)).

### B. Claims for Relief

Defendant presents four issues on appeal, (1) the Kotteakos issue; (2) the substantial proof issue; (3) the Skilling issue; and (4) the theory-of-the-case instruction issue. Defendant argues that these four issues raise fairly debatable legal claims that, if decided in his favor, would result in reversal of his conviction.

#### 1. *Kotteakos* Issue

Defendant argues that the government violated the prohibition on charging multiple separate conspiracies in a single count, creating a variance that subjected him to highly inflammatory "spillover" evidence that had no relevance to him. Defendant argues that this case is precisely like the multiple conspiracy charge held to require reversal in Kotteakos v. United States, 328 U.S. 750, 767-68 (1946) (holding that charging multiple conspiracies in single count constitutes impermissible variance requiring new trial if defendant's substantial rights are affected by prejudicial "spillover" evidence). Defendant also argues that the district court's instructions increased the prejudicial impact of the impermissible variance.

The government counters that the conspiracy charged in this case is distinguishable from the conspiracy charged in Kotteakos.

6

1  The government argues in Kotteakos the Supreme Court found
2  prejudicial variance where the government charged one fraud
3  conspiracy, but proved eight or more nearly identical conspiracies
4  at trial, each conspiracy having one common conspirator who ran the
5  scheme multiple times.  The government contends that the prejudice
6  was amplified because the trial court instructed the jury that they
7  were required to consider all of the many conspiracies as one
8  conspiracy.  Kotteakos, 328 U.S. at 767-68.  Here, the government
9  argues, the district court instructed the jury on the elements as
10 to each object and that the government must prove that the offense
11 was committed for that object or objects.  Thus, the government
12 contends, the indictment did not charge Defendant with multiple,
13 separate conspiracies in one count.  The government continues that
14 Sekhon's codefendants were charged in a separate count for their
15 participation in a second conspiracy (Count 17) which consisted of
16 assisting a confidential informant to defraud CIS by preparing his
17 fraudulent asylum application, filing it, and then preparing him to
18 give false testimony.  The government argues that although damning
19 evidence about this second conspiracy was entered into evidence
20 (including undercover recordings of the confidential informant's
21 meetings with Sekhon's codefendants), it was not inflammatory.
22 Moreover, the government contends, the trial judge instructed the
23 jury to decide the case of each defendant on each crime charged
24 against that defendant separately without allowing any count as to
25 any defendant to control the verdict on any other count or as to
26 any other defendant.
27      Though the Court will not delve into the merits, it finds that
28 Defendant raises a substantial issue concerning the Kotteakos

claim. Count One alleges one conspiracy with two objects. Yet, the overt acts of the second conspiracy (Count 17) were included in the umbrella Count One conspiracy. Sekon's codefendants were charged in Count 17 for their participation in a second conspiracy, but Defendant was not charged with that second Count 17 conspiracy, indicating that there were two conspiracies charged in the same count.

To prove the second Count 17 conspiracy, the government offered powerful evidence – the undercover recordings of the confidential informant's meetings with Sekhon's codefendants. The government's argument that the trial court instructed the jury on the elements as to each object, thus protecting the Defendant from spillover evidence, is unavailing. The district court merely instructed the jury that

> Although the defendants are charged in Count One with conspiring for two different objects, it charges only one conspiracy. The government must prove beyond a reasonable doubt that only one of the two charged objects existed. However, you must all agree, unanimously, that the offense was committed for that object or objects.

Jury Instruction No. 22 (Doc. #316).

The district court gave no instruction that the Count 17 conspiracy evidence could not be considered against Sekhon, although that evidence concerned a conspiracy and substantive offenses that had not been charged against him.

Given that there may be a <u>Kotteakos</u> violation, Defendant may have grounds for a reversible error claim based on "the right not to be tried . . . for the conglomeration of distinct and separate offenses committed by others. . . ." <u>Kotteakos</u>, 328 U.S. at 775; see also <u>United States v. Durades</u>, 607 F.2d 818 (9th Cir. 1979)

(reversing defendant's conviction in part by finding a prejudicial variance where defendant was indicted for one conspiracy but there were at least two conspiracies and defendant was a participant in only one of them). Accordingly, Defendant has raised a substantial question of law.

### 2. Substantial Proof Issue

Defendant argues that the evidence properly admissible against him, as opposed to that concerning the charged offenses in which he played no part, failed to prove that he engaged in a criminal agreement proscribed by 18 U.S.C. § 371. Defendant argues that no witness, neither client nor coworker, testified that he ever knowingly submitted, or intended to submit, a statement on an asylum application he knew to be false.

The government counters that the evidence of Defendant's guilt was significant, multi-faceted and included: (1) the general and pervasive nature of asylum fraud that permeated the Sekhon & Sekhon law firm; (2) Defendant's own statements; and (3) documentary evidence recovered during the course of the criminal investigation.

This Court was not the trial court and did not see or hear the evidence presented against the Defendant, nor is it the appellate court with the entire record before it. Thus, this Court must rely on the parties' briefs to determine whether defendant has raised a substantial question of law or fact on this issue of whether the evidence was sufficient to sustain defendant's conviction. The Court is persuaded by the government's arguments on this issue. The government cites to a former Sekhon & Sekhon associate who described to the jury her experience when she

confronted the Defendant regarding the fraudulent asylum applications being presented by the firm and his response that if she was uncomfortable doing those applications, she should find other work to do.  The government also presents evidence of a computer registered to Defendant containing multiple templates for Indian doctors, similar to those that were fraudulently submitted by clients personally represented by Sekhon.  In addition, the government provides evidence of four asylum applications submitted by Defendant over the course of nine months on behalf of Nepalese clients that were identical in their stories of persecution.  Moreover, it appears Sekhon's role in furthering the conspiracy was documented by multiple clients who testified that he assisted them in their interview preparations, at the actual asylum interview, and before the immigration court.  According to one client, Sekhon prepared detailed affidavits that corresponded to his asylum narrative without consulting him or the overseas declarants for whom the affidavits were intended.  Another client testified that she told Sekhon that her story did not make sense.  A third client presented a similar concern and sought advice from Sekhon about what to do with his false asylum claim after the law firm was identified as being under investigation.  Based on the strength of this evidence, the Court finds that this issue does not raise Def a substantial question likely to result in reversal.

3. *Skilling* Issue

Defendant presents the same argument as in his previous motion for release pending appeal that the alternative "defraud" theory upon which Defendant's jury was instructed under § 371 was

10

unconstitutionally overbroad as applied to Sekhon's lawful advocacy on behalf of his clients, particularly in the wake of <u>Skilling v. United States</u>, 561 U.S. ___, 130 S. Ct. 2896 (2010).

The trial court and the Ninth Circuit already considered and rejected Defendant's argument. <u>See</u> <u>United States v. Sekhon</u>, No. 10-10485 (9th Cir. May 4, 2011) (order denying Sekhon's motion for bail pending appeal); Transcript re: Hearing on Motion for Release Pending Appeal (Doc. #545). Because this issue has already been decided by both the trial court and the appellate court, the Court finds that Defendant does not raise any new substantial questions concerning this argument.

4.   <u>Theory-of-the-Defense Instruction</u>

Defendant's final argument is that the district court's refusal to instruct on the legal duties of immigration attorneys denied him his right to a theory-of-the-defense instruction, thereby depriving the jury of the legal principles critical to a correct resolution of the Count One conspiracy charge. The government retorts that it is not reversible error to reject Defendant's proposed instruction on his theory of the case because the other instructions allowed him to argue ignorance of the fraud and protected him from conviction based on a theory of negligence.

The Court finds that Defendant does not present a substantial question. "[I]t is not reversible error to reject a defendant's proposed instruction on his theory of the case if other instructions, in their entirety, adequately cover that defense theory." <u>United States v. Dees</u>, 34 F.3d 838, 842 (9th Cir. 1994). As the government argues, Defendant's theory-of-the-case

11

instruction added nothing but an additional bulwark against conviction based on negligence, a possibility foreclosed by the instructions given by the trial court.  Thus, the Court finds that this argument does not present a substantial question.

### III. ORDER

For the reasons set forth above,

Defendant's Motion for Release Pending Appeal is GRANTED because his Kotteakos argument presents a substantial question likely to result in reversal.

IT IS SO ORDERED.

Dated:  June 14, 2012

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE