UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Respondent,<br><br>   vs.<br><br>JAGDIP SINGH SEKHON, MANJIT KAUR RAI,<br><br>   Movants. | No. 2:06-cr-0058-JAM-EFB P<br><br><br>ORDER |

Movants Jagdip Singh Sekhon and Manjit Kaur Rai have filed motions to vacate, set aside, or correct their sentences pursuant to 28 U.S.C. § 2255.[1] ECF Nos. 622, 627. The court has determined that two claims (presented in both § 2255 motions) merit an evidentiary hearing. ECF No. 678. The first of these claims alleges that government witnesses Carol Webster and Ranbir Khera offered testimony which the government knew to be false in violation of *Napue v. Illinois*, 360 U.S. 264 (1959). The second is that the government failed to disclose that it had offered Khera legal permanent residency in exchange for his testimony in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Movant Rai now asks the court for leave to conduct Khera's deposition and to amend her § 2255 motion. ECF Nos. 705, 710. She has filed a proposed

---

[1] These motions were assigned, for statistical purposes, the following civil case numbers: No. 2:15-cv-2491-JAM-EFB and No. 2:16-cv-00067-JAM-EFB.

1

amended motion. ECF No. 711. Movant Sekhon has filed single-paragraph notices of joinder in Rai's motion for deposition and motion to amend. ECF Nos. 712, 713.

**I.      Background**

In 2009, movant Sekhon was convicted of a single count, and movant Rai of several, of violating federal law in connection with the filing of fraudulent asylum applications. In its opposition to Sekhon's § 2255 motion, the government includes a brief summary of the facts of the case. The court reproduces this summary in part solely for background purposes.

> Sekhon & Sekhon was founded in 1995 by Defendant and his younger brother, Jagprit Sekhon. ECF No. 504-11 at 54–57 (RT 6215–18). The firm focused on representing clients in immigration proceedings. Id. at 54, 59 (RT 6215, 6220). The firm maintained offices in San Francisco and Sacramento. ECF No. 502-9 at 46 (RT 652). Defendant was based in the San Francisco office while Jagprit was based in the Sacramento office. *Id*. Defendant specialized in asylum work. ECF No. 504-11 at 59 (RT 6220).
>
> In 2002, a United States asylum officer, Mark Temple, became suspicious about asylum claims filed on behalf of Sekhon & Sekhon clients. ECF No. 502-7 at 50–51 (RT 455–56). The matter was referred to Immigration and Customs Enforcement (ICE) Special Agent Carol Webster for investigation. ECF No. 502-7 at 55–56 (RT 460–61). During the course of the investigation, Special Agent Webster had a confidential informant pose as a potential Sekhon & Sekhon client. ECF No. 503-10 at 79–80 (RT 2295–96). The informant recorded meetings with defendants Jagprit Sekhon, Rai, Caza, and Harmath; those recordings were later played at trial. ECF No. 504 at 23–29 (RT 3487–93).

ECF No. 646 at 7-8. At trial, the government introduced testimony and evidence from various sources with the intent of proving that Sekhon & Sekhon was a "fraud factory" wherein "each defendant played a different role in the process, but each was vital to the overall scheme, the processing of fraudulent asylum claims." *Id*. at 9-13; ECF No. 504-14 (RT 6680).

**A.      False Testimony**

Movants argue that the government knowingly presented false testimony from Agent Webster and Ranbir Khera. ECF No. 622 at 62-72; ECF No. 627 at 49-54. As noted above, Webster was an Immigration and Customs Enforcement agent who investigated Sekhon & Sekhon for asylum fraud. ECF No. 502-7 at 55-56 (RT 460–61). Khera is an Indian national who first sought immigration assistance from Sekhon & Sekhon's Sacramento office in 2000.

/////

ECF No. 503-2 at 75-79 (RT 1633-1637). Khera testified that he met with Sekhon's brother Jagprit, signed several documents, and subsequently received an asylum application from the firm by mail. *Id*. at 76-84 (RT 1634-1642). He testified that the application contained several statements which falsely described both his involvement with a Sikh separatist movement and local police retaliation against him stemming from that affiliation. *Id*. at 85-90 (RT 1643-1648). Khera testified that he called Jagprit Sekhon and informed him that, due to the falsity of those statements, he would not attend his asylum interview. *Id*. at 92 (RT 1650). Khera would later marry a United States citizen and seek renewed adjustment to his immigration status. *Id*. at 93-94 (RT 1651-1652). Officials referred him to the Sacramento Immigration Office sometime in 2005, and he testified that he first met Webster at that time. *Id*. at 95 (RT 1653).

Both movants allege that, at trial, Khera and Webster misrepresented their interactions. They state that both witnesses falsely testified about a 2005 meeting in Sacramento between Webster, Khera, and his wife, Sarbjit Kaur, which actually never occurred. ECF No. 503-3 at 81-85 (RT 1743-1747); ECF No. 504 at 53-54 (RT 3517-3518). Webster testified that, as a result of observing the couple's interaction at this meeting, she was convinced that their marriage was *bona fide*. ECF No. 506 at 47- 48 (RT 3804-3805). Webster would go on to maintain that she had not promised Khera any favorable adjudication in exchange for his testimony and state that, based on meeting the couple, she "was confident that he would have gotten his green card" on the *bona fides* of the marriage. ECF No. 504 at 54-57 (RT 3518-3521); ECF No. 506 at 61-62 (RT 3817-3818). Movants argue that Webster's testimony was perjured and have provided declarations from Kaur which state that she never met Webster or travelled to Sacramento with Khera to discuss his immigration status with anyone. ECF No. 622-10 at 298; ECF No. 627-2 at 167. Movants emphasize that Khera and Kaur *did* attend an interview with a different immigration official in San Francisco in 2003 to establish their marriage *bona fides*. After meeting with the couple, that immigration official raised numerous concerns about the legitimacy of the marriage. *See* ECF No. 622-3 at 44; *see also* ECF No. 627 at 36. Finally, movants point to a 2006 memo from Webster to the Fresno office of Customs and Immigration Services requesting that Khera's immigration status be adjudicated. ECF No. 622-3 at 29. The memo describes

3

Khera as a "key witness in an ongoing ICE criminal investigation regarding the preparers of his asylum application" and notes that the information he provided was "crucial to the indictment of three attorneys in an asylum fraud ring." *Id*. Movants contend that this language is indicative of Khera being provided an adjudicative benefit for his testimony. *See* ECF No. 627 at 36.

Movants state that the foregoing discrepancies are material. They argue that they show that Khera was not, as the government presented at trial, granted permanent residence as a matter of course.[2] Rather, the movants contend that the fabrication of the 2005 meeting and the weakness of the 2003 marriage interview both indicate that Khera could only have been granted permanent residence in exchange for his trial testimony. Movants conclude that the revelation of Agent Webster's alleged perjury in this matter would have undermined her overall credibility as a witness and the government's case against them would have weakened significantly.

**B.    Failure to Disclose**

Movants also argue that the government violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to inform the defense that Khera had been granted lawful permanent residence in exchange for his testimony. ECF No. 622 at 81; ECF No. 627 at 56-57. The government maintains that Khera was not given anything in exchange for his testimony. ECF No. 646 at 35; ECF No. 658 at 28-29.

---

[2] At trial, Judge Damrell noted his own concerns about the investigation into Khera's marriage. He referenced the 2003 meeting with the San Francisco immigration official where concerns were raised about the legitimacy of Khera's marriage and stated:

> All the documents seem to point to a problem. The interview points to questions that the hearing officer had that apparently were not resolved at the hearing.
>
> …
>
> My concern is it is left on the cliff anticipating something beyond that, and the next thing that we know, the witness has got a permanent status.

ECF No. 503-3 at 102 (RT 1764). Government counsel agreed to look into the matter (*Id*. at 103 (RT 1765)) but stated that "to [his] understanding" Webster had no influence on Khera's adjudication. Webster confirmed that understanding in her testimony the next day. ECF No. 504 at 53-57 (RT 3517-3521).

4

**II.     The Motion to Depose Ranbir Khera**

   **A.     Governing Law**

District courts may, for good cause, authorize parties to a § 2255 motion to conduct discovery "under the Federal Rules of Criminal Procedure of Civil Procedure, or in accordance with the practices and principles of law." Rule 6, Rules Governing Section 2255 Proceedings; *United States v. Finkel*, 165 F. App'x 531, 532-33 (9th Cir. 2006); *United States v. Dollison*, No. 3:09-cr-00106-SLG-DMS, 2017 U.S. Dist. LEXIS 142584, at *17 (D. Alaska Sep. 4, 2017). Good cause under Rule 6(a) exists "where specific allegations before the court show reason to believe that the petitioner may, if facts are fully developed, be able to demonstrate that he is entitled to relief." *Finkel*, 165 F. App'x at 533 (internal quotation marks and citations omitted). Discovery should not be granted "for fishing expeditions to investigate mere speculation" or "conclusory allegations." *Id.*; *Dollison*, 2017 U.S. Dist. LEXIS 142584, at 17. The Ninth Circuit reviews the district court's discovery determination for abuse of discretion. *Finkel*, 165 F. App'x at 533.

   **B.     There Is Good Cause for the Deposition**

To determine whether there is good cause for the requested deposition, the court must ask whether movants have provided reason to believe that, with further factual development, they could make out their constitutional claims. Those claims are brought under *Napue* and *Brady*.

The Supreme Court's decision in *Napue v. Illinois* holds that "a conviction obtained through use of false evidence, known to be such by representatives of the State" violates a defendant's rights under the Fourteenth Amendment. 360 U.S. 264 at 269 (1959). *Napue* is also violated where "the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Id*. *Napue* draws no distinction between false testimony that goes directly to a defendant's guilt and testimony that bears only on the credibility of a witness. *Id*. To prevail on a *Napue* claim, "the petitioner must show that (1) the testimony (or evidence) was actually false, (2) the prosecution knew or should have known that the testimony was actually false, and (3) that the false testimony was material." *United States v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003).

/////

"In assessing materiality under *Napue*, we determine whether there is any reasonable likelihood that the false testimony could have affected the judgment of the jury; if so, then the conviction must be set aside." *Hayes v. Brown*, 399 F.3d 972, 984 (9th Cir. 2005) (internal quotations and citations omitted). "Under this materiality standard, the question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id*. Mere inconsistencies in testimony are insufficient to establish either that the testimony was false or that the prosecutor knowingly used false testimony. *United States v. Croft*, 124 F.3d 1109, 1119 (9th Cir. 1997).

*Brady v. Maryland*, 373 U.S. 83 (1962) and its successors require the prosecution to disclose evidence that is favorable to the accused, "either because it is exculpatory, or because it is impeaching." *Strickler v. Greene*, 527 U.S. 263, 282 (1999). There is no violation under *Brady* unless the evidence the prosecution failed to disclose prejudiced the accused – that is, that there is a reasonable probability the suppressed evidence would have produced a different verdict. *Id*. at 281.

In finding that movants are entitled to an evidentiary hearing on their *Napue* and *Brady* claims, the court has already found that they have provided the court with specific factual allegations which, if true, state claims on which relief under § 2255 could be granted. ECF No. 671 at 9-10. The court concluded that Sarbjit Kaur's affidavit did not simply imply that Khera and Webster lied on the stand; instead, it flatly refuted their testimony about the 2005 meeting. *Id.* at 9. It further found that the inconsistency between Kaur's account and that of the two government witnesses was not explored at trial and that, "given the import of Webster's testimony to the government's case, the court cannot simply dismiss her allegedly false testimony as immaterial." *Id.*

Movants have provided additional evidence in support of these claims gathered in early November 2017. ECF No. 714-1 (Decl. of Frank W. Huntington III); *see* discussion regarding Motion to Amend, *infra*. At that time, Rai's attorney Kresta Daly traveled to New York City with investigator Frank Huntington to investigate Rai's case. As part of the investigation, the two

located and interviewed Maribel Diaz, Khera's first wife. *Id.* Diaz told Huntington and Daly that she had been paid to marry Khera and met him for the first and only time when they were married at the Clerk's office. *Id.* This evidence contradicts Khera's trial testimony that he and Diaz married because they were in love and various other representations about the marriage and subsequent divorce. ECF No. 714 at 1-2.

The evidence provided by movants, if it holds up, indicates that two government witnesses – including the government's chief investigator – gave false or misleading testimony at trial. If Webster falsely testified about meeting Khera and Kaur to determine the bona fides of their marriage, a reasonable inference from this fact would be that she was also willing to take steps to influence the positive outcome of Khera's immigration petition, including overlooking his alleged marriage fraud(s). Obviously, the government disputes any these allegations and any such inference. But good cause has been shown to permit movants the discovery they seek on the matter. With further factual development (including deposing Khera to determine the extent of his false testimony, whether any advantages were offered for false testimony, who offered such advantages, etc.), movants may be able to show that the government knew or should have known that it was presenting false testimony (*Napue*) and/or that it failed to disclose impeaching evidence to the defense (*Brady*).

The government argues that movants already know what Khera will say at the deposition because he will simply repeat his trial testimony. The basis for this assertion is unclear, especially since there are issues that were not explored at trial (e.g., the discrepancy between Kaur's account of the marriage and Khera's and the discrepancy between Khera's and Webster's account of the Sacramento interview and Kaur's declaration that no such meeting occurred). The government also argues that movants can develop their claims through resort to other evidence. But Khera is certainly a valid and perhaps the best source of evidence regarding the veracity of his testimony and whether he was induced to provide false testimony. Thus, there is good cause for Khera's deposition.

/////

/////

7

### III. The Motion to Amend

#### A. Governing Law

Whether to allow amendment of a § 2255 motion is governed by Federal Rule of Civil Procedure 15. 28 U.S.C. § 2242 (providing that a petition for writ of habeas corpus "may be amended or supplemented as provided in the rules of procedure applicable to civil actions."); Rule 12, Rules Governing Section 2255 Proceedings (incorporating the Federal Rules of Civil and Criminal Procedure to § 2255 proceedings to the extent not inconsistent with other statutory provisions); *Mayle v. Felix*, 545 U.S. 644, 654-56 (2005). Where, as here, a responsive pleading has been filed, movants must obtain leave of court to amend, which should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2).

In the Ninth Circuit, courts consider five factors to determine whether to grant leave to amend: (1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the party has previously amended her pleadings. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995). The factors do not have equal weight, however: leave to amend may be denied solely on the basis of futility of amendment. *Id.*

The government opposes amendment. It argues that amendment is futile because: (1) the proposed amendments are untimely under 28 U.S.C. § 2255(f) and do not "relate back" to the original claims under Rule 15(c), and (2) the amendments do not state viable claims or materially support the existing claims.

#### B. The Factors Favor Allowing Amendment

Rai's motion to amend does not identify specifically what she is seeking to add to or change about the original § 2255 motion. Similarly, Sekhon has simply filed a single-page notice of joinder in the motion for leave to amend, without any indication of how that joinder would operate, since his original § 2255 motion is separate from Rai's and the proposed amended motion concerns Rai only. However, comparing their original § 2255 motions to the proposed amended motion reveals the following proposed changes.

Rai's original petition (ECF No. 627) asserted four claims: (1) a *Napue* claim based on the alleged perjury of Webster, Khera, and another witness named Mojaddidi; (2) a *Brady* claim

based on the alleged perjury of Webster and Khera and potential deal between them to confer an immigration benefit on Khera; (3) an ineffective assistance of trial counsel claim based on counsel's failure to present as a witness Professor Smith, an expert in immigration law; and (4) a cumulative error claim.

Sekhon's original petition (ECF No. 622) also asserted four claims: (1) a *Napue* claim based on the alleged perjury of Webster, Khera, Mojaddidi, and another witness named Davinder Singh; (2) a *Brady* claim just like Rai's; (3) an ineffective assistance of trial counsel claim based on (a) counsel's failure to investigate the bona fides of Khera's marriage to Kaur and (b) counsel's failure to investigate the words or statements prosecution witness Mojaddidi attributed to Jagdip in an alleged conversation; and (4) an ineffective assistance of appellate counsel claim based on counsel's failure to raise two alleged sentencing errors.

Compared to the originals, the proposed amended motion is streamlined – it contains just three claims: (1) the *Napue* claim based solely on the alleged perjury of Khera and Webster; (2) the associated *Brady* claim; and (3) a claim of cumulative error. ECF No. 711. All claims of ineffective assistance are omitted, as are claims premised on alleged perjury by Mojaddidi and Singh, which are now abandoned.

The only addition is that Rai now argues that Khera lied on the stand not only about his marriage to Kaur, but also about his first marriage, to a woman named Maribel Diaz. *Id.* at 19-20. Rai argues that Webster knew or should have known that this first marriage was fraudulent but was either incompetent or chose to ignore it "because she needed Khera's testimony to obtain a conviction on the conspiracy count." *Id.* at 28. Rai argues that the evidence of the first marriage fraud is material because it would have undermined the government's position that Webster was an experienced and dogged immigration investigator. *Id.* at 30-31. Alternatively, it would suggest that such an experienced and dogged investigator was aware of the problems surrounding Khera's status but was willing to give him a break as compensation for his cooperation/testimony in the criminal case against the movants. Either way, it would have further undermined the credibility of various other witnesses whose cooperation was secured by Webster. *Id.*

/////

9

It is clear that the amended motion would supplant Rai's original motion if allowed. But it is not clear what result Sekhon seeks in "joining" Rai's motion to amend. At the hearing on the motion, Sekhon's counsel did not wish to dismiss claims advanced in his original motion but not included in Rai's proposed amended motion but also had not submitted a proposed amended pleading from which it could be determined how Sekhon wants to amend his § 2255 motion. Because the proposed amended motion concerns Rai only, and because Sekhon has not presented to the court a proposed amended motion nor points and authorities justifying such amendment, Sekhon's "joinder" in Rai's motion for leave to amend is denied without prejudice. Sekhon may file a motion for leave to amend, accompanied by a proposed amended motion, on or before January 17, 2018. Accordingly, the following analysis concerns movant Rai only.

### 1. **Timeliness**

The government first argues that amendment should not be allowed because the amendment is not timely. The original motion was timely, but the proposed amended motion was filed more than a year after Rai's conviction became final. There are two ways in which the amended motion might avoid a timeliness bar: (1) a start date for calculation of the limitations period of § 2255(f)(4), or (2) the relation back provisions of Rule 15(c).

28 U.S.C. § 2255(f) provides a one-year statute of limitations for motions brought under § 2255. The limitations period begins from the latest of:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Rai argues that the amended petition is timely under § 2255(f)(4) because the new facts supporting her claims were discovered, through the exercise of reasonable diligence, on November 6, 2017, when defense counsel located and interviewed Maribel Diaz.

"Due diligence" under 2255(f)(4) does not require "maximum feasible diligence" but rather "reasonable diligence under the circumstances." *Ford v. Gonzalez*, 683 F.3d 1230, 1235 (9th Cir. 2012) (evaluating the analogous provision of 28 U.S.C. § 2244(d)(1)(D)). The "due diligence clock" starts running "when a person knows or through diligence could discover the vital facts, regardless of when their legal significance is actually discovered." *Id.* Rai argues that she was reasonably diligent under the circumstances. She points out that she filed her original § 2255 motion pro se. She was appointed counsel after the court ordered an evidentiary hearing on the *Napue* and *Brady* claims, in December 2016. Counsel has been reviewing the discovery in the case, which is around 12,000 pages long and much of which was not produced by the government until May 2017. Since then, defense counsel and an investigator "have literally travelled around the country interviewing witnesses and locating records." ECF No. 710 at 4. Rai argues that, even exercising diligence, she could not have become aware of the facts showing that Khera was lying about his marriage to Diaz any earlier, but does not really explain why.

The government argues that Rai could have discovered the facts regarding the Diaz marriage at the time of trial. It argues that they knew at that time that Khera had been married twice and that, in fact, defense counsel questioned Khera about the marriage on cross-examination. The trial transcript does reveal that two of the defense attorneys (for Sekhon and for co-defendant Jagprit Sekhon) questioned Khera about his marriage to Diaz and that Khera's responses were such that would put a reasonable person on alert that the validity of the marriage was questionable. For example, Khera referred to Maribel Diaz as "Marble," going so far as to spell her name M-A-R-B-L-E. ECF No. 503-3 at 6-7. He testified that he married her three weeks after he arrived in this country, immediately afterward saw an immigration lawyer, and the marriage lasted only a few months. *Id.* at 6, 48. The court agrees with the government that, based on this testimony, along with Rai's suspicions regarding Khera's second marriage, Rai could have become aware of the facts surrounding the Diaz marriage earlier, with the exercise of due diligence. Accordingly, Rai cannot benefit from the later limitations period start-date under § 2255(f)(4).

/////

Nevertheless, the court agrees with Rai that the new factual allegations (the Diaz marriage facts) relate back to the allegations in the original § 2255 motions and for that reason they are timely under Rule 15(c)(1). Under that rule, a claim added to a timely-filed habeas petition after the limitations period has run is considered timely only if it "relates back" – that is, shares a common core of operative facts with one of the original, timely claims. *Mayle v. Felix*, 545 U.S. 644, 659 (2005). A new claim does not relate back "when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650. The question before the court is whether the new allegations that Khera lied about his first marriage present facts that are different "in time and type" from the old allegations that Khera lied about his second marriage, that both Khera and Webster lied about the 2005 Sacramento meeting, and that the government provided an immigration benefit to Khera in exchange for his testimony that it failed to disclose to the defense.

The government contends that the "core of facts" here are the facts regarding Khera's distinct marriages, and because there were two marriages, there are two distinct sets of facts – one set of facts concerning the first marriage, which occurred a few years earlier in New York, and another set of facts concerning the second marriage, which occurred in the early 2000s in California. The court disagrees. The material facts undergirding movants' claims are not that Khera was married and the various details about those marriages, but rather that Khera lied about these underlying facts on the stand (and that, possibly, Webster knew or should have known that the marriages were fraudulent and nevertheless facilitated the positive adjustment of Khera's immigration status in exchange for his testimony). The facts about the marriages are relevant only to show that perjury occurred. The "core of operative facts" are the facts of Khera's and Webster's testimonies at trial. The facts supporting Rai's original § 2255 motion were that Khera and Webster lied at trial to cover up an immigration benefit that Webster facilitated for Khera for his testimony. The facts suggesting that the Diaz marriage was also a sham are related in both time and type because they also support Rai's claims that the government knowingly presented false testimony and provided an immigration benefit to Khera that he would not have been entitled to otherwise.

12

*Mayle* is instructive about what kind of facts "differ in time and type." There, the habeas petitioner timely presented a claim that the introduction of videotaped testimony of a prosecution witness violated his Confrontation Clause rights under the Sixth Amendment. 545 U.S. at 648. After the limitations period expired, he sought to add a claim that the use of admissions he made in a coercive police interrogation violated his right against self-incrimination under the Fifth Amendment. *Id.* at 648-49. The Supreme Court held that the Fifth Amendment claim did not relate back, because it was based on a separate episode (introduction of his police interrogation) than the Sixth Amendment claim (which was based on the introduction of the videotaped interview of the prosecution witness). *Id.* at 660.

In contrast, Rai is not presenting a completely unrelated claim based on unrelated facts. Rather, all of Rai's new allegations are based on three episodes that were challenged in the original petitions: (1) Khera's trial testimony; (2) Webster's trial testimony; and (3) an immigration benefit provided to Khera and not disclosed to the defendants. *See also Nguyen v. Curry*, 736 F.3d 1287, 1297 (9th Cir. 2013) (holding that an ineffective-assistance-of-appellate-counsel claim related back to an original petition where the original petition alleged that the petitioner had been subjected to double jeopardy and the new claim alleged that appellate counsel should have raised the double jeopardy issue on appeal but hadn't done so, even though some facts supporting the IAC claim arose after the facts supporting the double jeopardy claim).

### 2. **Other Futility**

The government further argues that, even if the court were to find the new allegations timely, it would be futile to allow the amendment because the facts of the Diaz marriage only impugn Khera's credibility and he offered no evidence against Rai. The government concedes, however, that "Khera's testimony was . . . relevant to Petitioners' convictions to the extent it related to Special Agent Carol Webster's credibility." That a person who allegedly has entered into two sham marriages for the purposes of remaining in this country was given legal status after meeting with Webster and shortly before testifying in this case raises a question about whether that legal status was legitimately conferred. The new allegations are relevant to the resolution of this question.

13

### 3. Other Factors

Lastly, the government argues that movants have unduly delayed their amendment and this delay prejudices the government. The government argues that the amendments are based on facts that movants have known since trial, but – although Khera's testimony should have put them on notice that there was something fishy about the Diaz marriage – there is no evidence that movants *actually* knew at that time that the Diaz marriage was a sham. Rai's counsel filed the motion to amend and the proposed amended petition almost immediately after her interview of Diaz in New York. The government argues that allowing the amendment will require more briefing and that the evidentiary hearing be rescheduled, which will inconvenience witnesses. These inconveniences are not uncommon in litigation and do not amount to prejudice – the government does not allege that allowing the amendment would impair its ability to litigate the merits of the motion.

Furthermore, there is no allegation of bad faith by Rai in bringing the motions, and this is her first amendment. Weighing all five factors – some delay, some inconvenience to the government that does not arise to legal prejudice, no bad faith, the amendment is not futile, and Rai has not previously amended her motion – the court finds that leave to amend, as provided by Rule 15(a), should be granted.

### IV. Conclusion

Accordingly, good cause appearing, IT IS HEREBY ORDERED[3] that:

1. The motion for leave to conduct the deposition of Ranbir Khera (ECF No. 705) is GRANTED. The deposition shall be limited to four hours at a time and place agreed to by the parties.

---

[3] The court has issued this order, rather than findings and recommendations, because "a motion to amend is not a dispositive motion because by its nature it only seeks to add or amend claims or parties rather than dismiss the action in its entirety." *Fernandez v. Nevada*, No. 3:06-cv-0628-LRH-RAM, 2011 U.S. Dist. LEXIS 6162, at *8 (D. Nev. Jan. 18, 2011); *accord Roberts v. Long*, No. 14-cv-0427-WQH (DHB), 2014 U.S. Dist. LEXIS 138322, at *9 n.4 (S.D. Cal. Sept. 29, 2014); *Butler v. Kelso*, No. 11cv02684 CAB(RBB), 2013 U.S. Dist. LEXIS 63863, at *29 n.4 (S.D. Cal. May 2, 2013); *Pat Pelligrini Flooring Corp. v. Itex Corp.*, No. CV 09-376-AC, 2010 U.S. Dist. LEXIS 25856, at *4 (D. Or. Mar. 16, 2010); *Everett v. Cherry*, 671 F. Supp. 2d 819, 820 (E.D. Va. 2009).

2. Sekhon's joinder in Rai's motion for leave to file an amended § 2255 motion (ECF No. 713) is DENIED without prejudice. If Sekhon wishes to amend his § 2255 motion, he must file a motion for leave to amend, supportive points and authorities, and the proposed amended § 2255 motion on or before January 17, 2018.

3. Rai's motion for leave to file an amended § 2255 motion (ECF No. 710) is GRANTED, and the amended § 2255 motion (ECF No. 711) is accepted as the operative motion in this action.

4. Respondent is directed to file a response to the Rai's amended § 2255 motion within sixty days from the date of this order. Respondent shall include with any answer any and all transcripts or other documents relevant to the determination of the issues presented in the motion. Rai's reply, if any, is due on or before thirty days from the date respondent's answer is filed.

DATED: December 19, 2017.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE