# CONFIDENTIAL MEMORANDUM - EX PARTE APPLICATION

**FILED**
Apr 26, 2021
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

DATE: April 13, 2021

TO: The Honorable Edmund F. Brennan, United States Magistrate Court

FROM: Kresta Daly, Attorney for Petitioner Manjit Rai and Erin Radekin, Attorney for Petitioner Jagdip Sekhon

RE: Joint Application under F.R.Crim.P. 17(c), Authorization to Issue Subpoena duces tecum.

*Note: This is an ex parte request and is not to be filed in the public record or served on the United States.*

Case name and Designation:   U.S. v. Sekhon et al
                             06-CR-00058-JAM-EFB

NEXT COURT DATE:   May 17, 2021

## REASONS FOR APPLICATION:

**Charges:** Manjit Rai and Jagdip Sekhon were tried and convicted in 2009. After winning in part and losing in part their initial appeals they each filed separate applications for writs of habeas corpus in late 2016.

**Status of the case**: Evidentiary hearing set for May 21, 2021.

**Justification for request:** Some months ago Petitioners filed motions for Summary Judgment. The government filed a response. Dkt. 887. In that response the government provided four pages of Ranbir Khera and Sarbjit Kaur's DMV records. Dkt. 887-5. The government claims these records prove Kaur and Khera were living together in 2003 at a time Petitioners believe they were not. Despite requests from Petitioners the government refuses to produce complete copies of these records[1].

## LAW AND ARGUMENT

The Sixth Amendment guarantees "the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor."

> "The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a

---

[1] In January 2019 this Court indicated a willingness to consider permitting Petitioners to subpoena documents pertaining to whether or not Khera and Kaur lived together at various times relevant to this litigation. Dkt. 800, 2:10-13.

1

> defense, the right to present the defendant's version of the facts as
> well as the prosecution's to the jury so it may decide where the truth
> lies." *Washington v. Texas*, 388 U.S. 14, 19 (1967).

F.R.Crim.P. 16 provides a mechanism for limited discovery by the defense. This rule, however, is certainly not the sole mechanism for the defense to obtain information prior to a trial, nor is it the only mechanism to obtain information from the government. Under F.R.Crim.P. 17(c), a subpoena may issue to order the production of documents or records before trial. Federal Rule of Criminal Procedure 17 implements the Sixth Amendment right to compulsory process. *United States v. Garmany*, 762 F.2d 929, 934 (11th Cir.), cert. denied, 474 U.S. 1062 (1985).

For decades, the U.S. Supreme Court has recognized that Rule 16 does not preclude the issuance of Rule 17(c) subpoenas. In *Bowman Dairy Co. v. United States,* 341 U.S. 214 (1951), the defendant was charged with antitrust crimes under the Sherman Act. The defense filed a discovery motion under Rule 16 in order to inspect papers the government intended to use at trial. Bowman Dairy also moved the court for an order directing the government to produce for pretrial inspection "other books, papers, documents and objects" the government had obtained. The trial judge directed the prosecutor to comply and, when he refused, held him in contempt. On appeal from the contempt, the Supreme Court made a number of observations still valid today. First, when the government has possession of documents or objects that it "will not put in evidence," then "the defendant may subpoena them under Rule 17(c) and use them himself." 341 U.S. at 219. Second, the accused may subpoena these materials even if they do not ultimately prove to be evidentiary.

> "There may be documents and other materials in the possession of
> the Government not subject to Rule 16. No good reason appears to
> us why they may not be reached by subpoena under Rule 17(c) as
> long as they are evidentiary. That is not to say that the materials thus
> subpoenaed must actually be used in evidence. It is only required
> that a good-faith effort be made to obtain evidence." *Id*., at 219-220.

In *Bowman Dairy*, the Court specifically permitted the defense to subpoena non-discoverable material from the government: There was no intention to exclude from the reach of process of the defendant any material that had been used before the grand jury or could be used at the trial. In short, any document or other materials, admissible as evidence, obtained by the Government by solicitation or voluntarily from third persons is subject to subpoena. *Id*., at 221.

*Bowman Dairy* left open practical questions regarding the implementation of Rule 17(c). Those questions were answered one year later in *United States v. Iozia,* 13 F.R.D. 335, (S.D.N.Y. 1952), in an opinion that was later cited with approval in *United States v. Nixon*, 418 U.S. 683, 700 (1974).  In *Iozia* the defendant was under indictment for tax evasion.  The defendant sought a subpoena pursuant to Rule 17(c) for records in the

possession of the government. The court, in granting the subpoena in part and denying it in part, held:

> "Good cause, in my opinion, requires a showing by the defendant, (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that *the party cannot properly prepare for trial* without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."[2] *Id.*, at 338 (emphasis added).

Other than noting Rule 17(c) subpoenas are returnable pre-trial, *Iozia* did not place timing constraints on the production of evidence. *Iozia* stressed the fact evidence can be obtained in order to *prepare for trial*. Notably, *Iozia*, as later affirmed in *Nixon*, did not require the evidence be used at trial, nor did it specify how far in advance of trial a Rule 17(c) subpoena may be used.

The seminal Rule 17(c) case is *United States v. Nixon*, 418 U.S. 683 (1974). The subpoenas sought tape recordings of conversations in the oval office recorded at the behest of (then) President Nixon, who was not a party to the case. At the outset, it is important to note the party seeking to issue the subpoenas did not know what information was on the tapes; nonetheless, the Supreme Court approved the issuance of the subpoenas.

In granting this approval, the Court wrote, under this test, in order to require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonable in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend to unreasonable delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition." *United States v. Nixon*, 418 U.S. at 699-700.

Courts interpreting the proper boundaries of Rule 17(c) subpoenas have emphasized their role in obtaining evidence that is relevant and admissible at trial. (See, *United States v. Wells*, No. Cr. S04-0069 MCE, 2005 U.S. Dist. LEXIS 23777, *5-6, 2005 WL 3823597 [E.D. Cal. Oct. 17, 2005]; holding that 17(c) was intended to provide a means for a defendant to obtain "specific, identifiable evidence for trial" quoting *United States v. Ruedlinger*, 172 F.R.D. 453, 455 [D. Kan. 1997]); see also, *United States v. Libby*, 432 F. Supp. 2d 26, 35 [D.D.C. 2006]; holding that Rule 17(c) subpoenas "may be used solely to secure specifically identified evidence for trial that is relevant and admissible.")

---

[2] The four part test set forth in *Iozia* was adopted by *Nixon* and is commonly referred to as the *Nixon* test.

However, there are few cases interpreting the permissible scope of a Rule 17(c) subpoena when the subpoena is directed at third party not involved in the litigation.  Those cases suggest the *Nixon* standards are inappropriate in such a situation. That high standard, [the *Nixon* standard] of course, made sense in the context of a Government subpoena, especially one seeking evidence from the President. It must be recalled that the Government's use of a subpoena occurs *after* the completion of a grand jury investigation. Indeed, the Supreme Court has held that "the *Nixon* standard does not apply in the context of grand jury proceedings...." *United States v. R. Enterprises,* 498 U.S. 292, 299–300, 111 S.Ct. 722, 112 L.Ed.2d 795 (1991).

A real question remains as to whether it makes sense to require a defendant's use of Rule 17(c) to obtain material from a non-party to meet this same standard. Unlike the Government, the defendant has not had an earlier opportunity to obtain material by means of a grand jury subpoena. Because the Rule states only that a court may quash a subpoena "if compliance would be unreasonable or oppressive," the judicial gloss that the material sought must be evidentiary—defined as relevant, admissible and specific—may be inappropriate in the context of a defense subpoena of documents from third parties. As one court has noted,

> "The notion that because Rule 16 provides for discovery, Rule 17(c) has no role in the discovery of documents can, of course, only apply to documents in the government's hands; accordingly, Rule 17(c) may well be a proper device for discovering documents in the hands of third parties." *Tomison,* 969 F.Supp. at 593 n. 14.

If this is so, then the only test for obtaining the documents would be whether the subpoena was: (1) reasonable, construed using the general discovery notion of "material to the defense;" and (2) not unduly oppressive for the producing party to respond. *United States v. Nachamie*, 91 F. Supp. 2d 552, 561–63 (S.D.N.Y. 2000). *Nachamie* is consistent with *Soliman*, supra, in holding there is no trial requirement for the use of a third-party subpoena.  "While subpoenas are usually used for compelling production of evidence for a trial, **it can be used for compelling production to determine an issue of fact raised in a pretrial motion** (emphasis added), *see* 2 *Federal Practice and Procedure, supra,* § 271, at 216-17 & n. 10." *United States v. Soliman*, 2008 WL 5114230, (W.D.N.Y. 2008).

The documents sought herein satisfy every element of the *Nixon* test.  (1) The potential evidentiary value of the recordings is significant for two different reasons. It is a main argument of the government.  The defense has no access to the complete records and therefore no way to evaluate the government's claims. (2) The US Attorney's office has taken the position it is not legally obligated to produce the records.  Petitioners have no other means of accessing the records. (3)  As previously noted the records requested herein are critical to defense's ability to rebut an erroneous claim by the government.  (4) Finally, this request is, obviously, in good faith.

I declare under penalty of perjury that the information set forth above is true and correct to the best of my knowledge and that the services requested are necessary to afford constitutionally adequate representation of my client. Executed at Sacramento, California on the date set forth above.

                                                 /s/ kresta daly
                                                 KRESTA DALY
                                                 Attorney for Petitioner
                                                 Manjit Rai

The Clerk is directed to file the above application and to issue the subpoena

So Ordered.

DATED: April 26, 2021.                 /s/ Edmund F. Brennan
                                            EDMUND F. BRENNAN
                                            UNITED STATES MAGISTRATE JUDGE